UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-CR-188 (SRN)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GARRETT PATRICK ZIEGLER,

        Defendant.

**POSITION OF UNITED STATES REGARDING SENTENCING**

The United States of America, by its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Chelsea A. Walcker and Alexander D. Chiquoine, hereby submits this memorandum regarding the sentencing of Defendant Garrett Patrick Ziegler. For the reasons described below, the United States respectfully requests that the Defendant be sentenced to 60 months of imprisonment followed by three years of supervised release.

**I.**  **Factual and Procedural Background**

    **A.**  **The Criminal Offense**

In late May 2020, the Twin Cities metro area experienced civil unrest following the death of George Floyd. (PSR ¶ 6.) While most of the civil unrest involved lawful peaceful protests, Mr. Ziegler used the tragedy to incite violence and commit criminal acts such as arson. (*Id.*)

On May 27, 2020, Mr. Ziegler and his co-defendant, Fornandous Cortez Henderson, attempted to burn down the Dakota County Western Service Center, which houses courtrooms, judges' chambers, and other state and local governmental

agencies. (PSR ¶¶ 7, 7 n2.) Unsuccessful in their initial attempt, Mr. Ziegler and Mr. Henderson returned to the Dakota County Western Service Center in the early morning hours of May 29, 2020, and again attempted to burn down the building. (PSR ¶ 8.) Mr. Ziegler claims that he was motivated to burn down the building due to his anger with law enforcement following the death of George Floyd. (PSR ¶¶ 7, 18.) He expressed his anti-police sentiments in recently recorded videos taken on his cell phone at riots and looting in the Twin Cities area. (PSR ¶ 12.) In these self-recorded videos, Mr. Ziegler encouraged others to engage in rioting and violent behavior towards law enforcement officers. In these videos, Mr. Ziegler states, "we need to fight back" and "hit the cops" because "they took one of ours, so we take two or three of theirs."[1]

Mr. Ziegler and Mr. Henderson shattered the building's windows using baseball bats and then threw Molotov cocktails[2] into the building. (PSR ¶ 8.) Some of the Molotov cocktails were "armed" with sharp objects. (*Id.*) Several of the destructive devices ignited and caused fires to spread inside the building. (*Id.*) Mr. Ziegler and Mr. Henderson set other fires inside the building by pouring flammable liquids and throwing unlit Molotov cocktails in and around the broken windows, then attempted to start the liquids on fire. (*Id.*)

Fire alarms at the building alerted the Apple Valley Police Department, which quickly responded to the alarms and extinguished the flames. (PSR ¶ 9.) However,

---

[1] He later recorded himself assembling Molotov cocktails and remarking, "I don't care if I gotta burn down the world."
[2] A Molotov cocktail is a homemade incendiary device that consists of a container filled with a flammable liquid and an attached wick or ignition source. The device is then thrown, which causes a fireball to spread upon impact. (PSR ¶ 7 n.1.)

2

extensive fire, smoke, and water damage from the sprinkler system, which was triggered by the attack, had already occurred by the time of the officers' arrival. (*Id.*) Initial assessments estimated hundreds of thousands of dollars in damages. (*Id.*)

Mr. Ziegler and Mr. Henderson were detained by officers near the building after their attack. (PSR ¶ 10.) When approached by the officers, Mr. Ziegler initially resisted arrest. (*Id.*) Officers later located Mr. Ziegler's vehicle in a nearby parking lot and discovered various items inside the vehicle associated with the Molotov cocktails assembled by Mr. Ziegler and Mr. Henderson, including an empty lighter fluid bottle and a plastic jar containing a propanol and ethanol mixture. (PSR ¶ 12.)

    **B.**    **Mr. Ziegler's Criminal History**

Mr. Ziegler was previously convicted of five petty misdemeanor offenses, all of which were traffic or speeding violations. (PSR ¶ 34.) These convictions spanned the last three years and resulted in fines only. (*Id.*) None of these convictions result in any criminal history points for Mr. Ziegler. (*Id.*) This is Mr. Ziegler's first matter in federal court and will be his first conviction in which he faces a substantial period of imprisonment.

    **C.**    **Mr. Ziegler's Upbringing and Mental Health Struggles**

Mr. Ziegler endured hardship during his formative years and has struggled with mental health issues since he was a juvenile. Although this does not excuse his crime, it provides context for his conduct.

Mr. Ziegler's early years were marked by instability and separation from his father, with whom he shared a close emotional bond. (PSR ¶ 38.) When Mr. Ziegler was in elementary school, his parents divorced. (*Id.*) Following his parents' divorce,

Mr. Ziegler moved with his mother and brother from Orlando, Florida, to Long Lake, Minnesota. (*Id.*) As a result of this move and resulting geographical distance between them, Mr. Ziegler's father was largely absent from his childhood. (*Id.*)

Mr. Ziegler's forced isolation from his father at an early age and his unstable relationship with his mother and brother during his formative years caused Mr. Ziegler to develop anger issues and violent outbursts at home and at school. (PSR ¶¶ 38–39.) These outbursts led to Mr. Ziegler's mental health hospitalizations and prolonged residential mental health treatment placements.[3] (PSR ¶ 39.) Mr. Ziegler began treatment for his mental health when he was 8 years old and has continued to struggle with mental illnesses for most of his life. (PSR ¶ 49.) Mr. Ziegler has been diagnosed with major depressive disorder, generalized anxiety disorder, ADHD, bipolar disorder, and oppositional defiant disorder. (*Id.*) Mr. Ziegler has been prescribed a variety of anti-depressants, anti-anxiety, and anti-psychotic medications for these mental illnesses. (*Id.*) However, at the time of the instant offense, Mr. Ziegler was not taking his medications.

Mr. Ziegler's early years were punctuated by a series of other traumatic events. When Mr. Ziegler was ten or eleven years old, he was sexually assaulted by an older child in the neighborhood. (PSR ¶ 40.) This trauma has weighed on Mr. Ziegler over the years and has contributed to some of his behavioral issues and suicidal thoughts. (*Id.*) Additionally, when Mr. Ziegler was a teenager, he was jumping on his trampoline to calm himself after an altercation with his mother, when police officers

---

[3] Mr. Ziegler estimates that he was hospitalized on at least five occasions and placed in group homes on at least two occasions during his formative years. (PSR ¶ 48.)

4

"swarmed" the area with their guns drawn and apprehended him. (PSR ¶ 41.) Mr. Ziegler's view of law enforcement was further impacted by the death of one of his friends during an altercation with police officers. (*Id.*) These interactions with law enforcement contributed to his mental and emotional state regarding the instant offense. (*Id.*)

Mr. Ziegler also has struggled with drug abuse, which he has used to "treat" and self-medicate his mental illnesses. (PSR ¶¶ 43, 52.) Mr. Ziegler first used marijuana at age 18. (PSR ¶ 52.) Since then, he has consumed marijuana daily, sometimes as much as 3 or 5 grams of marijuana per day. (*Id.*) Mr. Ziegler's daily use of marijuana continued until his arrest for the instant offense. (*Id.*) Despite his history of substance abuse, and concerns over his drug abuse raised by his former employer, former girlfriend, and mental health provider, Mr. Ziegler has never received any substance dependency treatment. (PSR ¶ 55.) However, Mr. Ziegler has expressed an interest in participating in the residential drug and alcohol program offered by the Bureau of Prisons. (*Id.*)

Notwithstanding his mental health struggles and drug abuse, Mr. Ziegler has managed to make notable strides in his education and maintain relatively steady employment. Mr. Ziegler graduated from Orono High School in 2014. (PSR ¶ 57.) He subsequently participated in post-secondary classes at Northwest Technical Center as well as college preparatory courses at Hennepin Technical College. (*Id.*) Since graduating from high school, Mr. Ziegler has held jobs at a landscaping company, gas stations, a childcare facility, and Target. (PSR ¶¶ 60–64.)

The combination of Mr. Ziegler's separation from his father and cross-country move at an early age (PSR ¶ 38), his sexual assault (PSR ¶ 40), his mental health hospitalizations and residential treatment placements (PSR ¶ 39), his substance abuse (PSR ¶¶ 43, 52), and his negative encounters with law enforcement (PSR ¶ 41), have posed serious challenges for him. Nonetheless, Mr. Ziegler, who is 25 years old and has a full life ahead him, is committed to seeking treatment and to turning his life around. (PSR ¶¶ 49, 55.) While incarcerated, he has sought treatment to address his mental health struggles. (PSR ¶ 49.) Upon release from custody, Mr. Ziegler hopes to marry his girlfriend and start a family with her. (PSR ¶ 42.)

## II.  The Charges, Plea, and Sentencing Guidelines Calculations

On August 27, 2020, Mr. Ziegler was charged by Information with one count of aiding and abetting arson, in violation of 18 U.S.C. §§ 2 and 844(i). (PSR ¶ 1.) On August 31, 2020, the parties' notified the Court that Mr. Ziegler agreed to plead guilty to the aiding and abetting arson charge. The parties anticipate that the agreement will be entered into the record at the forthcoming consolidated plea and sentencing hearing, as part of the procedures set forth in the Court's December 16, 2020 Order concerning a consolidated plea and sentencing hearing (Doc. No. 37).[4]

The parties' plea agreement contemplated a total adjusted offense level of 21, a criminal history category of I, and a Guidelines' imprisonment range of 36–47 months.[5] (Proposed Plea Agreement ¶ 8(e).) The PSR's Guidelines calculations is

---

[4] An executed copy of the parties' proposed plea agreement was submitted to the Court via email on September 1, 2020.
[5] The plea agreement mistakenly lists Mr. Ziegler's imprisonment range as 36–47 months, rather than 37–46 months. The parties will raise the issue at the change of

6

identical to that of the parties. (PSR ¶ 70.) Notably, Mr. Ziegler's crime of conviction carries a statutory mandatory minimum sentence of five years (60 months) of imprisonment. (PSR ¶ 70; Proposed Plea Agreement ¶¶ 7(a), 8(e).)

Assuming that Mr. Ziegler does not engage in conduct inconsistent with acceptance, the United States will *not* move for an upward departure or variance from the Guidelines range. (Proposed Plea Agreement ¶ 9(a).) The parties jointly recommend that Mr. Ziegler's sentence include three years of supervised release with a requirement that he participate in mental health counseling during that time. (*Id.* ¶ 9(b).)

Mr. Ziegler agrees to pay restitution, which is mandatory, in the full amount of any claim. (Proposed Plea Agreement ¶ 14.) The total claimed restitution amount is $205,872.53. (PSR ¶ 13.) Mr. Ziegler is jointly and severally liable for restitution with Mr. Henderson. (*Id.* ¶ 14.)

### III. Sentencing Recommendation

Consistent with the parties' proposed plea agreement, the United States respectfully requests that the Court sentence Mr. Ziegler to 60 months of imprisonment followed by three years of supervised release. This sentence is appropriate based on a full consideration of the parties' agreement and the factors set forth in 18 U.S.C. § 3553(a). In particular, a 60-month sentence, followed by three years of supervised release, is appropriate given the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the

---

plea hearing and clarify for the record that the parties acknowledge the correct range is 37–46 months.

need to afford adequate deterrence. Significantly, it also will allow Mr. Ziegler to receive much-needed treatment for his mental health and substance abuse struggles.

## A. Accounting for Mr. Ziegler's history and characteristics, the seriousness of his crime, the need to provide just punishment, and protecting the public.

A sentence of 60-months of imprisonment with three years of supervised release to follow accounts for the history and characteristics of Mr. Ziegler, acknowledges the seriousness of his offense, provides just punishment for his crime, and protects the public. *See* 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A), 3553(a)(2)(C). Mr. Ziegler's crime was undoubtedly serious, and he committed it knowingly and intentionally. He did not express his anger with the criminal justice system and the death of George Floyd through lawful peaceful protest. Instead, Mr. Ziegler planned and executed a violent attack against the Dakota County Western Service Center to "make a statement to express [his] sorrow and anger" towards law enforcement. (PSR ¶ 18.) After one failed previous arson attempt, Mr. Ziegler's efforts were successful, causing hundreds of thousands of dollars in damage. Further, Mr. Ziegler's attack disrupted the important business of the Dakota County Western Service Center and caused emotional pain to several individuals whose offices, and the personal and "priceless" sentimental effects they kept therein, were destroyed. (PSR ¶ 15.) Moreover, while fortunately no one was killed or injured during the attack, the results could have been catastrophic.[6] A significant term of incarceration is necessary to punish this serious crime.

---

[6] Although Mr. Ziegler's attack was executed in the early morning hours, when it was less likely that the building was occupied, this did not mean it was impossible, or

8

However, there are also mitigating factors to consider. First, Mr. Ziegler's struggles with mental health and substance abuse are apparent. Although his mental illnesses and drug addiction do not excuse his criminal conduct, they contributed to his poor choices and callousness towards others. Second, Mr. Ziegler's early years were difficult, punctuated by his parents' painful divorce and his subsequent separation from his father—his closest family member. Again, these struggles in no way excuse Mr. Ziegler's criminal conduct, but they do contextualize his behavior.

To balance these competing considerations, the United States proposes a sentence of 60 months, which is the statutory mandatory minimum for the arson charge. A three-year term of supervised release to follow will provide additional protection to the public, while also giving Mr. Ziegler structure and accountability that will support his reformation.

**B.   Deterring crime and promoting respect for the law.**

The United States' proposed sentence will deter Mr. Ziegler, and others, from committing crimes in the future and promote respect for the law. *See* 18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(2)(B). Although Mr. Ziegler has no criminal history and has never been incarcerated, a substantial sentence of incarceration is necessary to convey to Mr. Ziegler—and others similarly situated—that committing arson will result in serious consequences.[7] Civil discourse and unrest have increased in recent

---

even unlikely, that anyone would be inside. As one victim noted, court reporters and other court staff often work late into the night at the building. (PSR ¶ 15.) It is thus a matter of luck that Mr. Ziegler's attack did not seriously injure or kill someone.
[7] The United States Sentencing Commission recently found that defendants who

9

years, making the distinction between lawful protest and criminality important to emphasize. The freedom to peacefully assemble and advocate against perceived injustices are bedrock rights that are integral to our democracy. However, when individuals like Mr. Ziegler engage in wanton criminality ostensibly in the name of the same issues being protested, it only serves to undermine the legitimate, peaceful exercise of these important rights by others. Thus, deterring the sort of criminality Mr. Ziegler engaged in is a particularly important objective in this case.

### C. Avoiding unwarranted sentencing disparities.

Mr. Ziegler's accomplice, Mr. Henderson, previously pleaded guilty to aiding and abetting arson. *See United States v. Henderson*, No. 20-CR-146 (SRN). In contrast to Mr. Ziegler, Mr. Henderson had a substantial criminal history. And while Mr. Ziegler was very much involved in the execution of the arson attack on the Dakota County Western Service Center, it was Mr. Henderson who selected it as the target in addition to participating in the attack. Mr. Henderson was sentenced to 78 months in prison, three years of supervised release, and ordered to pay full restitution. *See United States v. Henderson*, No. 20-CR-146 (SRN), Doc. No. 48 (Dec. 10, 2020 Sentencing Judgment). By operation of the statutory mandatory minimum, Mr. Ziegler will receive a sentence of at least 60 months' imprisonment. To ensure no unwarranted discrepancies between the sentences for Mr. Henderson and Mr. Ziegler, and to account for their respective culpability, a sentence of 60 months

---

received a sentence of 60 months or more were 17% less likely to reoffend, compared to those who received lesser sentences. *Length of Incarceration and Recidivism*, United States Sentencing Commission, at 4 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf (last visited Jan. 10, 2021).

10

is appropriate for Mr. Ziegler. The United States' proposed sentence of 60 months—the mandatory minimum—accomplishes these ends.

### D. Providing Mr. Ziegler with an opportunity for reformation and acknowledging his acceptance of responsibility.

A considerable term of incarceration is necessary to provide Mr. Ziegler with needed treatment and an opportunity to reform himself. *See* 18 U.S.C. § 3553(a)(2)(D). A sentence of 60 months accomplishes this end, while also acknowledging his acceptance of responsibility.

Mr. Ziegler is clearly in need of mental health and substance abuse treatment. His struggles with these issues have negatively shaped his life for many years. While incarcerated, and later while on supervised release, Mr. Ziegler will have an opportunity to meaningfully engage in this needed treatment. There is reason to believe that he will be successful—Mr. Ziegler has already sought out mental health treatment while incarcerated and has expressed an interest in receiving substance abuse counseling during his incarceration. (PSR ¶¶ 49, 55.) However, these issues have festered for many years and cannot be meaningfully addressed quickly. A term of 60 months' incarceration will ensure that while in the carefully monitored environment of a prison, Mr. Ziegler can access needed programming and treatment for a prolonged period.[8]

Mr. Ziegler should also receive a sentence that credits his acceptance of responsibility. As the Court is aware, not all acceptance is created equal. Many

---

[8] Such a sentence also will provide Mr. Ziegler the chance to pursue educational certifications and vocational training, which he is interested in so that he can start a career in auto mechanics or culinary arts upon his release. (PSR ¶ 57.)

11

defendants "accept responsibility" only after filing numerous (and often frivolous) motions that waste executive and judicial time, or equivocate and minimize their involvement until the very end, yet they still receive full "credit" in the form of a two-or three-level reduction to their offense level. This is not the case for Mr. Ziegler. When arrested federally—and after having an opportunity to review the evidence against him—Mr. Ziegler agreed to plead guilty to an information, thereby saving the United States and the Court considerable resources. In his statement of acceptance, Mr. Ziegler did not minimize his conduct or involvement in the offense, expressed remorse, acknowledged the harm done to himself, his family, and his community, and expressed a desire to be law-abiding in the future. A 60-month bottom-of-the-box sentence of imprisonment appropriately credits his acceptance of responsibility.

### E. Restitution.

Mr. Ziegler has agreed to pay restitution, which is mandatory in this case. (Proposed Plea Agreement ¶ 14). The restitution claims total $205,872.53. (PSR ¶ 13.) The United States seeks restitution in this full amount, with joint and several liability, for Mr. Ziegler.

## IV. Conclusion

The appropriate sentence for Mr. Ziegler is not easy to determine. His crime was serious and necessitates significant punishment. However, there are mitigating factors, many of which suggest that if Mr. Ziegler can receive treatment for his mental illnesses and control his substance abuse, he can live a productive, law-abiding life. The United States respectfully submits that a sentence of 60 months' imprisonment, followed by three years of supervised release, strikes the right balance. Such a

sentence will protect the public while also giving Mr. Ziegler a much-needed opportunity for rehabilitation, accomplishing the goals set forth in 18 U.S.C. § 3553 without being greater than necessary to do so.

Dated: January 15, 2021　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　ERICA H. MACDONALD
　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　*/s/ Chelsea A. Walcker*
　　　　　　　　　　　　　　　　　　BY:　CHELSEA A. WALCKER
　　　　　　　　　　　　　　　　　　　　　(Attorney ID No. 0396792)
　　　　　　　　　　　　　　　　　　　　　ALEXANDER D. CHIQUOINE
　　　　　　　　　　　　　　　　　　　　　(Attorney ID No. 0396420)
　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorneys