UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Cr. No. 20-188 (SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **DEFENDANT'S POSITION** |
| vs. | ) | **REGARDING SENTENCING** |
| | ) | |
| GARRETT PATRICK ZIEGLER, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Mr. Ziegler will soon appear before this Court to plead guilty to and be sentenced for the offense of *Arson*, in violation of 18 U.S.C. §§ 844(i) and 2. In the plea agreement, Mr. Ziegler and the government agree that this offense is punishable by a 5-year mandatory minimum and a maximum of 20 years. The parties also agree that the United States Sentencing Guidelines establish a base offense level of 24 less 3 points for acceptance of responsibility, yielding an adjusted offense level of 21. Mr. Ziegler has absolutely no criminal history. The guideline range, then, is 37–46 months[1] in prison with a mandatory minimum of 60 months.

For the reasons set forth below, Mr. Ziegler, by and through his attorney, Ryan Garry, respectfully requests that Your Honor to sentence him to 60 months in prison.

---

[1] The plea agreement mistakenly states 36–47 months. This will be corrected on the record.

## BACKGROUND

Mr. Ziegler was born in Florida in 1995 (PSR, ECF No. 43, ¶ 38). No one disputes that he had a difficult childhood. His parents divorced when Mr. Ziegler was 8 or 10 years old, and he moved to Minnesota with his mother and older brother (*id.*). The divorce was traumatic and painful for him as he was close to his father. Because his father remained in Florida, Mr. Ziegler struggled to maintain a relationship (*id.*). Much of his anger and behavioral issues arose from his father's abandonment. Mr. Ziegler's relationship with his mother was unstable (*id.* at ¶ 39). He would yell, scream, threaten, and throw objects during arguments (*id.*). Some of these incidents led to his mental health hospitalizations and residential treatment placements (*id.*). He also physically fought with his brother on many occasions (*id.*).

At age 10, Mr. Ziegler was sexually assaulted by an older child in the neighborhood (*id.* at ¶ 40). He was traumatized by the incident and did not disclose it to anyone (*id.*). It is clear that some of his behavioral issues and suicidal ideations relate to awful event (*id.*).

At age 14, Mr. Ziegler had an altercation with his mother and went to jump on the trampoline in their backyard to calm himself (*id.* at ¶ 41). Police entered the yard, approached him with guns drawn, and detained him (*id.*). At age 24, Mr. Ziegler learned that his very good friend was killed by police during a domestic assault call (*id.*). Mr. Ziegler was deeply affected by these events, and they likely planted the seed of his distrust with law enforcement (*id.*).

Mr. Ziegler graduated high school in 2014 and participated in post-secondary and college preparatory classes (*id.* at ¶ 57).  He had a seasonal job in 2014 and was working consistently since May 2015 up until his arrest (*id.* at ¶¶ 59–64).

Mr. Ziegler has been in a relationship for the past year (*id.* at ¶ 42).  While this case has strained their relationship, Mr. Ziegler still hopes to marry his girlfriend and start a family upon his release from prison (*id.*).

Mr. Ziegler's mother reported a concern of Mr. Ziegler's alcohol abuse and marijuana dependency to self-medicate due to his mental health (*id.* at ¶ 43).  His father reported that Mr. Ziegler was most stable when taking his prescribed medications (*id.*).

## THE OFFENSE CONDUCT

The plea agreement establishes that Mr. Ziegler and his co-defendant aided and abetted each other by intentionally and maliciously damaging the Dakota County Western Service Center ("Service Center") by fire on May 29, 2020.  While Mr. Ziegler did not have a connection with the Service Center, his co-defendant was familiar with the Center given his prior criminal prosecutions.  Mr. Ziegler agreed to target the Service Center because it was connected to law enforcement, with which he had prior negative experiences.  Mr. Ziegler's experiences with law enforcement centered around his mental health.  And of course, like many others, he was angry about George Floyd's death.

In the days before the arson, Mr. Ziegler posted some videos threatening law enforcement and government property and encouraged others to do the same.  These videos and the crime itself were motivated by Mr. Ziegler's past interactions with law enforcement, his negative impression of the police, and George Floyd's death.  In this

same time period, Mr. Ziegler purchased items to make Molotov cocktails and other items for the arson.

On May 27, 2020, Mr. Ziegler and his co-defendant attempted a first arson on the Service Center by using one Molotov cocktail.  Mr. Ziegler drove the vehicle, and his co-defendant threw the Molotov cocktail.  While the Molotov cocktail ignited, it did not cause significant damage.

On May 29, 2020, Mr. Ziegler drove his co-defendant to the Service Center in the early morning hours.  They used baseball bats to break windows and threw Molotov cocktails into the windows.  Some caused fires damaging the Service Center.  They also tried to start other fires by pouring ignitable liquids and then attempting to start the liquid on fire.  Officers were able to extinguish the fires, but the sprinkler system and the fires caused damage.

## ARGUMENT

The mandatory minimum in this case is 60 months.  The guideline range is 37–46 months.  Due to the mandatory minimum, Mr. Ziegler unfortunately requests a sentence of 60 months.

### I. Mr. Ziegler's Mental Health and Chemical Health

Mr. Ziegler has struggled with mental health for nearly all of his life.  His mother reported that Mr. Ziegler exhibited mental health concerns starting at age 4 or 5 (PSR, ECF No. 43, ¶ 47).  She initially sought help from a facility in Florida (*id.*).  Since then, Mr. Ziegler has been hospitalized, received unwanted placements, and undergone extensive treatment (*id.*).  It is clear that Mr. Ziegler has done best when maintaining

medication compliance (*id.*).  His mother believes Mr. Ziegler's impulsivity and inability to foresee consequences led to this offense (*id.*).

Mr. Ziegler recalled 2–3 group home placements and 5–10 mental health hospitalizations (*id.* at ¶ 48).  He has engaged in self-harm, has attempted suicide on multiple occasions, has been diagnosed with ADHD, major depressive disorder, generalized anxiety disorder, bipolar disorder, and oppositional defiant disorder (*id.* at ¶¶ 48–49).  He has been prescribed many medications in his life (*id.* at ¶ 49).  He reported that his time in Sherburne County Jail, and in particular the many lockdowns during the pandemic, has led to more depression and anxiety (*id.*).  He received mental health services in jail in June 2020 and requested medication (*id.*).  He also reported that his mother's family has a history of mental health issues (*id.* at ¶ 50).

Mr. Ziegler's marijuana use started at age 18 with regular use beginning at age 20 (*id.* at ¶ 52).  He would use marijuana to self-medicate his mental health or to sleep (*id.*).  He was using marijuana consistently up until his arrest (*id.*).  His mother, girlfriend, former employer, and mental health provider all have expressed concerns about his marijuana use (*id.*).

Mr. Ziegler tried alcohol at age 22 or 23 and denied any problems with alcohol use (*id.* at ¶ 53).  He tried LSD twice at age 23 but has not tried or abused any other drugs (*id.* at ¶ 54).

## II. Mr. Ziegler's Acceptance of Responsibility

Mr. Ziegler accepted full responsibility in this case (PSR, ECF No. 43, ¶ 18). He will plead guilty to the offense as requested by the government, and wrote the following statement:

> On May 29, 2020, I aided and abetted my co-defendant using fire and explosive materials to damage the Dakota County Western Service Center. This violated 18 U.S.C. §§ 2 and 844(i).
>
> I was extremely upset by the death of George Floyd. I wanted to make a statement to express my sorrow and anger. My co-defendant chose the Dakota County Western Service Center as a target and I agreed. While I had no connection to the building, I had previous negative interactions with law enforcement, and I thought committing arson at this building would ease the anger and sorrow I was feeling.
>
> I am extremely sorry for my actions in this case. I made a huge mistake by getting involved in these criminal actions. If I could do it over, I would have found a legal way to express my emotions. I never should have done this and I am extremely remorseful.

## III. Appropriate Sentence

The government argues that 60 months in prison is an appropriate sentence for Mr. Ziegler (Position of United States Regarding Sentencing, ECF No. 47). While Mr. Ziegler is unable to ask for a lower sentence, defense counsel respectfully disagrees that 60 months is appropriate. Indeed, it is far too high given the circumstances of this case and the background and characteristics of Mr. Ziegler.

First, Mr. Ziegler had no attachment to the Service Center. The Service Center was only the victim of Mr. Ziegler's actions because his co-defendant suggested it as *he* had a connection via court cases. Absent his co-defendant's suggestion, Mr. Ziegler would likely not have chosen this location.

6

Second, as the government points out and as described above, Mr. Ziegler has numerous mental health and chemical dependency problems that contributed to his decision-making in this case (*id.* at p. 9).

Third, Mr. Ziegler's co-defendant received 78 months with "a substantial criminal history" (*id.* at p. 10). His co-defendant's guideline range was 70–87 months with a criminal history category of V (*United States v. Henderson*, 20-CR-146 (SRN), ECF No. 41, p. 6). Mr. Ziegler, on the other hand, has no criminal history outside of petty misdemeanor traffic cases (PSR, ECF No. 43, ¶ 34) and thus his guideline range is 37–46 months. His co-defendant is also more culpable than Mr. Ziegler in that he chose the target location. As his co-defendant, who was more culpable, was given a sentence within the guideline range, but for the mandatory minimum, Mr. Ziegler may also have received a sentence within his guideline range.

For these reasons, 60 months in prison is far too high for Mr. Ziegler. Unfortunately, the law forbids anything lower.

## CONCLUSION

For the foregoing reasons, Mr. Ziegler respectfully requests that this Court sentence him to the mandatory minimum 60 months in prison. It is unfortunate that Mr. Ziegler is stuck with such a lengthy sentence.

Respectfully submitted,

**RYAN GARRY, ATTORNEY, LLC**

Dated: January 15, 2021

s/ Ryan Garry
Ryan P. Garry (Attorney No. 0336129)
Attorneys for Defendant
333 South Seventh Street, Suite 2350
Minneapolis, MN 55402
Phone: (612) 436-3051
Fax: (612) 436-3052
ryan@ryangarry.com