UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 20-CR-188(SRN)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GARRETT PATRICK ZIEGLER,

        Defendant.

PLEA AGREEMENT AND
SENTENCING STIPULATIONS

The United States of America and Garrett Patrick Ziegler (hereinafter, the "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The Defendant voluntarily agrees to plead guilty to Count 1 of the Information, which charges the Defendant with Aiding and Abetting Arson of Property Used in or Affecting Interstate Commerce, in violation of 18 U.S.C. §§ 2 and 844(i). The United States agrees that it will not charge the Defendant with other crimes related to the conduct set forth herein.

2.    **Factual Basis.** By pleading guilty, the Defendant admits the following facts are true and further admits that, were this matter to go to trial, the United States would prove these facts beyond a reasonable doubt:

    a.    At all relevant times, the Defendant was a resident of and resided in the State and District of Minnesota. The conduct described herein took place in the State and District of Minnesota.

1

b. On or about May 29, 2020, the Defendant and Fornandous Cortez Henderson (the "Co-defendant"), each aiding and abetting the other, intentionally and maliciously damaged, by means of fire and explosive materials, the Dakota County Western Service Center (the "WSC") located at 14955 Galaxie Avenue in Apple Valley, Minnesota.

c. The Co-defendant choose the WSC as a target because he had previously made court appearances at that building. The Defendant did not have any personal connection to the WSC, but agreed to target it because of its connection to law enforcement, the Defendant's past negative interactions with law enforcement (which often related to the Defendant's mental health and did not result in criminal charges), his general negative impression of law enforcement, and the recent death of George Floyd.

d. From on or about May 26 through May 28, 2020, the Defendant recorded a series of videos, which he posted to Snap Chat, wherein he threatened to harm law enforcement personnel and/or government property and advocated that others do the same. Again, these videos were motivated by the Defendant's past negative interactions with law enforcement, his general negative impression of law enforcement, and the recent death of George Floyd.

e. From on or about May 26 through May 28, 2020, the Defendant purchased or provided a number of items necessary to carry out the attack on the WSC. These items included, but are not limited to: mason jars, pushpins and other similar sharp objects, isopropyl alcohol, nail polish remover, bottles of high-proof alcohol, lighter fluid, bandanas/scarves, and a baseball bat. Many of those items were used by the Co-defendant to construct Molotov cocktails, that is, containers filled with ignitable liquid—some of which also contained sharp objects, such as pushpins—and a wick.

f. In the early morning hours of May 29, 2020, the Defendant drove himself and the Co-defendant to the WSC. Once there, they broke multiple windows at the WSC using baseball bats. The Defendant then assisted the Co-defendant in throwing multiple Molotov cocktails into the broken windows. Some of these devices successfully ignited and caused fire damage to the WSC. The Defendant, along with the Co-defendant, also started and attempted to start other fires at the WSC by pouring ignitable

2

      liquids, and throwing unlit Molotov cocktails, in and around the broken windows, then attempting to start the liquids on fire.

g. Responding officers quickly extinguished the fires at the WSC. However, the Defendant's attack triggered the sprinkler system and inflicted significant fire and water damage to the WSC.

h. Previously, on or about May 27, 2020, the Defendant aided and abetted the Co-defendant in carrying out a similar attack on the WSC using a Molotov cocktail. The Defendant purchased/provided the ingredients necessary for the Co-defendant to make a Molotov cocktail. The Defendant then drove himself and the Co-defendant to the WSC. The Co-defendant exited the vehicle and threw a single Molotov cocktail against the building, which ignited, but burned out without causing significant damage. The failure of this first attack was a motivating factor for the second attack on the WSC on or about May 29, 2020.

i. At the time of the fires, the WSC was used in interstate and foreign commerce. That is to say, the WSC housed agencies and organizations involved in business or trade taking place between people or entities located in two or more states, and between people and entities in the United States and other countries. These agencies and organizations included, but were not limited to: the Dakota County District Court, including courtrooms, a clerk's office, and judges' chambers; facilities used for U.S. passport applications and processing; facilities used for voter registration and, on occasion, as a polling place during elections; the Dakota County Office of Planning; the Dakota County Office of Parks; the Dakota County Office of Public Health; and the Dakota County Transit and Transportation Offices.

3. Waiver of Indictment. The Defendant waives the right to be charged by Indictment. The Defendant agrees to sign a written waiver of this right at or before the change of plea hearing.

4. Waiver of Pretrial Motions. The Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of this Agreement, and based upon the concessions of the United States, the Defendant

knowingly, willingly, and voluntarily gives up the right to file and litigate pre-trial motions in this case.

5. **Waiver of Constitutional Trial Rights.** The Defendant understands that he has the right to plead not guilty and go to trial. At trial, the defendant would be presumed innocent, have the right to a jury trial or, in certain circumstances, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these rights, except the right to counsel. The Defendant understands that by pleading guilty, he is admitting his guilt, and, if the Court accepts the guilty plea, the Defendant will be adjudged guilty without a trial.

6. **Collateral Consequences.** The Defendant understands that as a result of his conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, the right to hold public office, and the eligibility for federal benefits.

7. **Statutory Penalties.** The parties agree that Count 1 of the Information carries the following statutory penalties:

    a. a mandatory minimum of 5 years' imprisonment;

    b. a maximum of 20 years' imprisonment;

    c. a supervised release term of up to 3 years;

    d. a fine of up to $250,000;

4

  e.  mandatory restitution; and

  f.  a mandatory special assessment of $100.

8. <u>Guidelines Calculations</u>. The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

  a. <u>Base Offense Level</u>. The parties agree that the base offense level is 24 because the offense involved the destruction or attempted destruction of a state or government facility. U.S.S.G. § 2K1.4(a)(1).

  b. <u>Chapter 3 Adjustments</u>. Other than acceptance of responsibility, discussed below, the parties agree that no Chapter 3 Adjustments apply.

  c. <u>Acceptance of Responsibility</u>. The government agrees to recommend that the Defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the Defendant understands and agrees that this recommendation is conditioned upon the following: (i) the Defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the Defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the Defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1. The parties agree that other than as provided for herein, no other Chapter 3 adjustments apply.

  d. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the Defendant falls into criminal history category I. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. U.S.S.G. § 4A1.1. The Defendant's actual criminal history and related status (which could impact the Guidelines advisory range of

5

imprisonment) will be determined by the Court based on the information contained in the Presentence Report and by the parties at the time of sentencing. If Defendant's criminal history category is something other than I this is not a basis for either party to withdraw from this Plea Agreement.

e. Guidelines Range. If the adjusted offense level is 21, and the criminal history category is I, the Guidelines range is 36–47 months of imprisonment. However, because the crime of conviction (arson) carries a mandatory minimum sentence of five years of imprisonment, the Guidelines range is adjusted to 60 months of imprisonment. 18 U.S.C. § 844(i); U.S.S.G. § 5G1.1(b)

The Defendant acknowledges and understands that his crime of conviction carries a five year (60 month) mandatory minimum sentence of imprisonment. 18 U.S.C. § 844(i).

f. Fine Range. If the adjusted offense level is 21, the fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

g. Supervised Release. The Sentencing Guidelines require a term of supervised release of between one and three years for Count 1. U.S.S.G. § 5D1.2(a)(2).

9. Sentencing Advocacy Agreements and Limitations. When advocating to the Court regarding the Defendant's sentence, the parties agree as follows:

- a. Based on information known to the government at the entry of this Agreement, and assuming that the Defendant does not engage in any conduct inconsistent with his acceptance of responsible (as determined within the sole discretion of the United States), the United States agrees that it will not seek any upward departure or variance from the properly calculated Guidelines range of 60 months' imprisonment.

- b. The parties jointly recommend that the Court impose a three year term of supervised release. They further recommend that a condition of the Defendant's supervised release be that he receive and participate in mental health counseling.

6

10. <u>Revocation of Supervised Release</u>. The Defendant understands that if he violates any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original term of supervised release, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

11. <u>Discretion of the Court</u>. The foregoing stipulations and agreements are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the Defendant's criminal history category. The Court may also depart and/or vary from the applicable Guidelines range. If the Court determines that the applicable Guidelines calculations or the Defendant's criminal history category are different from that stated above, the parties may not withdraw from this Agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

12. <u>Special Assessment</u>. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which he is convicted. U.S.S.G. § 5E1.3. The Defendant agrees to pay the special assessment, which is due and payable upon sentencing.

13. <u>Consent to VTC Proceedings and Consolidated Guilty Plea and Sentencing Process</u>. The Defendant understands his right to attend certain proceedings in court, including a plea hearing and a sentencing hearing, pursuant to Rule 11 and Rule 32 of the Federal Rules of Criminal Procedure, respectively.

7

Nonetheless, the Defendant consents to a consolidated guilty plea and sentencing process. As part of this process, the Defendant understands that a presentence report ("PSR") will be prepared by the United States Probation Office before the entry of his guilty plea. This report will contain the information required under Rule 32 of the Federal Rules of Criminal Procedure. The Defendant further understands that he will be required to submit any objections to the PSR or any matters relevant to the Court's determination of his sentence at or before the time of his consolidated guilty plea and sentencing hearing. The Defendant expressly waives his right to appeal the manner in which his sentence will be imposed under these procedures. Furthermore, should COVID-19 or other public health considerations prevent the consolidated change of plea and sentencing hearing from being held in-person, the Defendant consents to such a hearing being held via video-teleconference ("VTC").

14.  Restitution. The Defendant understands and agrees that 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply to this case and that the Court is required to order the Defendant to make restitution to the victims of his crimes. The Defendant also agrees that he is jointly and severally liable with the co-defendant, Fornandous Cortez Henderson, for any amount of restitution ordered by the Court.

15.  Forfeiture. The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of his violation of 18 U.S.C. §§ 2 and 844(i), and pursuant to 18 U.S.C. § 844(c) and 28 U.S.C. § 2461(c), any explosive

8

materials involved, or used, or intended to be used, in that violation. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit any additional directly forfeitable property.

16. **FOIA Waiver.** The Defendant knowingly, willingly, and voluntarily waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17. **Complete Agreement.** This, and any agreements signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the Defendant. Other than this Agreement, the Defendant acknowledges that no threats, promises, or representations have caused him to plead guilty. The Defendant has read this Agreement and carefully reviewed each provision with his attorney. The Defendant further acknowledges that he understands and voluntarily accepts each term and condition of this Agreement.

ERICA H. MacDONALD
United States Attorney

Date: 8/28/2020

ALEXANDER D. CHIQUOINE
Assistant United States Attorney

Date: 8/27/2020

GARRETT PATRICK ZIEGLER
Defendant

9

Date: Aug. 27, 2020

RYAN GARRY, ESQ.
Counsel for Garrett Patrick Ziegler

10